Juanita PARKER, Plaintiff-Appellee,

v.

RYDER TRUCK LINES, INC.,
Defendant-Appellant.

Supreme Court of Tennessee.

Dec. 27, 1979.

John E. McManus, Owens, Moore & McManus, Memphis, for plaintiff-appellee.

Joel Porter, Burch, Porter & Johnson, Memphis, for defendant-appellant.

## OPINION

HARBISON, Justice.

In this workmen's compensation case the employer appeals from an award of death benefits made to the widow of a deceased employee. The Chancellor found that the death of the employee on April 10, 1976, from a myocardial infarction was causally related to his employment as an over-the-road truck driver for appellant. Although the factual issues presented are extremely close, we are of the opinion that there was sufficient evidence, both lay and medical, to support the conclusions reached by the Chancellor. Accordingly his decision is affirmed.

Decedent, Frank Edward Parker, Jr., was forty years of age at the time of his death. He had been a truck driver for more than twenty years and had been employed by appellant since 1972 or 1973.

The medical history of decedent reflects that for about three years he had experienced chest pain, particularly after lying down at night. He was hospitalized in Atlanta in 1973 and was advised at that time that he had a hiatal hernia. According to later medical records, he was advised that his electrocardiogram at that time was normal. During the year prior to his death he had a marked increase in weight, which he attributed to eating more than usual and to drinking additional amounts of beer. He had been tense and nervous for some time prior to his death, and in the weeks preceding his fatal heart attack he had experienced after exertion a discomfort in his

chest consisting of a deep aching, or aching and pressure, without radiation into other parts of the body.

Decedent had been off from work for about three days prior to April 4, 1976. At about 12:30 p. m. on that date he left the Memphis terminal of his employer driving a large tractor-trailer unit. On the day of his departure, according to his wife, decedent was in apparent good health and felt well.

Decedent drove to Opelousas, Louisiana, arriving at about 11:45 p. m. He and a fellow truck driver, Kenneth L. Montgomery, spent the night at a motel. Mr. Montgomery testified that decedent complained of being unwell and was obviously sick when they went to the motel. He heard decedent tell the Ryder dispatcher on the next morning that he was sick and wished to return home. Montgomery testified, however, that the dispatcher persuaded the decedent to continue on his assigned trip from Opelousas to Bonifay, Florida, a distance of some 427 miles usually requiring a driving time of about eight and one-half hours. Mr. Montgomery testified that decedent was operating an "18 wheeler" tractor-trailer unit and that the driver of such a vehicle would usually be fatigued both physically and mentally after operating it for eight hours or more.

According to appellant's records, decedent did drive to his destination on Monday, April 5, making the trip in approximately nine hours. On Tuesday, April 6, 1976 he left Bonifay at approximately 10 a. m. and arrived in Jackson, Mississippi at approximately 5 p. m. He then apparently rested in Jackson until 1:30 a. m. and returned to the Memphis terminal, arriving at about 6 a. m. on April 7.

Appellant's terminal manager in Jackson, Mississippi, Mr. Elford W. Davis, recalled that when decedent arrived in Jackson he was unwell. He testified:

"Frank, when he arrived, said that he wasn't feeling good, that he thought he had had the flu or was taking the flu and that he was feeling pretty bad, and you could tell, it was obvious that he was, you know, that he wasn't normal."

The witness took the decedent to a motel and advised him not to try to drive on to Memphis if he did not feel able to do so. He left his personal phone number with the decedent and told him to call the witness if he needed assistance. At that time decedent was not complaining of chest pain, insofar as Mr. Davis remembered.

When decedent reached his home shortly after arrival at the Memphis terminal on Wednesday, April 7, 1976, his wife said that he was obviously very sick and was complaining of severe chest pain. She said that he had made about six calls to her while he was on the trip. Although she was not permitted to state the substance of these conversations, she said that it was most unusual for him to call so frequently. As soon as possible after his arrival at home she took him to Dr. Leon Cornelius, the family physician, who prescribed medication for relief of pain. Later, in the afternoon of April 7, decedent began to experience severe chest pain and Mrs. Parker again called Dr. Cornelius. She was told to give further medication and to bring decedent back to the doctor's office on the next morning. When she did so, Dr. Cornelius examined decedent and immediately referred him to Dr. Joseph A. Sullivan, a specialist in internal medicine. Dr. Sullivan examined decedent in the emergency room at the Methodist Hospital and immediately admitted him into the coronary care unit with a provisional diagnosis of myocardial infarction.

Extensive diagnostic tests and studies failed to document the presence of a myocardial infarction, and on Saturday, April 10, decedent was moved out of the coronary care unit into a private room. On that morning, however, he had an additional episode of chest pain. He did not wish to return to the coronary care unit. During the afternoon while talking to his wife on the telephone decedent suddenly collapsed. He died a short time later. Dr. Sullivan was of the opinion that the decedent suffered from arteriosclerotic heart disease, and it was his opinion that the physical and mental exertion involved in decedent's driv-

ing for appellant from Memphis to Florida and return may have aggravated or made more severe his pre-existing heart condition. Dr. Sullivan said that the final myocardial infarction which immediately caused death probably did not occur until April 10, although he could not be certain of this. It was his opinion that the pain which decedent had been experiencing prior to admission was angina pectoris, and he suspected that the severe episode of pain which the decedent had experienced shortly prior to admission might have represented a myocardial infarction. Qn cross-examination he testified that he felt that the work which decedent had performed, with its resulting mental and physical strain, might have been an aggravating factor to the arteriosclerotic heart disease. He testified:

"I don't feel on what evidence we have right now there is a definite causal relationship, say, between physical labor and the production of arteriosclerotic-vascular disease. I do think there can be a precipitating or aggravating type situation."

Further, Dr. Sullivan testified that he felt that heavy emotional stress, fatigue or physical labor might produce an acute myocardial infarction in an individual who had arteriosclerosis, and he felt that the decedent's work could have been a precipitating factor in the pain which the decedent was experiencing on April 7. He reiterated that he could not state precisely the moment his "heart attack" occurred. He said:

"Presumably he could have started the heart attack with a small amount of damage during that two-hour period prior to coming to the hospital and then completed the heart attack on April 10th. I cannot prove that."

On redirect examination Dr. Sullivan testified that while he could not definitely state that the decedent's work could have been a substantial factor in contributing to the final attack on April 10, nevertheless:

"My own feeling is that heavy physical exertion and emotional stress do aggravate to the point of perhaps helping to precipitate but, you know, I can't give you a specific date."

He further stated that he suspected that decedent's work "enhanced" decedent's preexisting condition and that it "very likely had some enhancing effect . . . ."

The employer offered the testimony of Dr. Otis S. Warr III, a specialist in cardiology. Dr. Warr did not see or treat the decedent. After a complete study of the medical and hospital records and reports, however, Dr. Warr was of the opinion that the decedent's fatal heart attack was not in any way related to, caused by or precipitated by his employment. It was his opinion that the decedent's fatal heart attack occurred after he had been removed from the coronary care unit on April 10 and that it resulted from the natural progression of pre-existing disease. He further testified that according to authoritative medical studies, truck driving is classified as light to moderate, as distinguished from heavy, physical labor.

On cross-examination, in response to a hypothetical question which stressed the decedent's complaints of chest pain on April 7, Dr. Warr testified that in his opinion the decedent's truck driving "could have" contributed to his fatal heart attack, although "I do not think it's very likely."

On redirect examination he stated positively that in his opinion the activity in which decedent had engaged at work did not cause his heart attack.

In an oral opinion, after evaluating all of the evidence, the trial judge concluded that the deceased apparently had a gradual onset, rather than a sudden massive heart attack. He found, however, that the decedent was ill and suffering from pain during his last trip and that his pain became progressively more severe.

The trial judge, faced with conflicting medical testimony, concluded to accept that of the examining and treating physician, rather than of the independent expert, and concluded that a causal relationship did exist between the exertion and strain of decedent's work and his ultimate death from heart disease.

As stated at the outset, the issues presented in this case are extremely close. There was abundant material evidence from which the trial court could have reached the opposite conclusion. On the other hand it is apparent that the deceased did become ill while at work during his last dispatched trip for appellant. His illness was first manifested on the night of Sunday, April 4. It persisted, and on the evening of April 6 he was still feeling unwell. When he arrived at home early on the morning of April 7, he was in severe pain. His wife, who had been concerned about his frequent telephone calls, immediately sought medical aid. Thereafter he experienced intermittent but progressively more severe pain until admitted to the emergency room on the morning of April 8 with a provisional diagnosis of myocardial infarction.

Both parties have discussed extensively in their briefs reported decisions in this state dealing with disability or death resulting from heart disease.

Appellant has cited and relies upon *Travelers Insurance Co. v. Googe*, 217 Tenn. 272, 397 S.W.2d 368 (1965). In that case, however, the Court found that on only one occasion had the deceased experienced chest pain or other symptoms of heart disease while at work and on that occasion there was no evidence of what labor, if any, he was doing. All other episodes of pain had occurred while he was in his apartment with his family. The Court found as a fact that the heart attack from which the employee died was not brought on in any way by the duties of his employment. The same is true of *Hagewood v. E. I. DuPont*, 206 Tenn. 239, 332 S.W.2d 660 (1960).

In *Chapman v. Aetna Casualty & Surety Co.*, 221 Tenn. 376, 426 S.W.2d 760 (1967), also cited by appellant, the evidence was found insufficient to demonstrate a causal connection between decedent's notification of discharge from employment and a fatal heart attack the following day. And in *Travelers Insurance Co. v. Evans*, 221 Tenn. 199, 425 S.W.2d 611 (1968), the death of a labor union official while walking on the street was held unrelated to his official duties in attending a union convention.

In the case of *Walker's Stores v. Livesay*, 215 Tenn. 306, 385 S.W.2d 745 (1965), the fatal attack occurred shortly after decedent returned from a lunch break, during which he had mowed part of the lawn at his residence. There, as here, medical testimony indicated that his employment activities "could or might" have contributed to the fatal onset, but the Court found no "other evidence from which the trial judge might reasonably infer the injury (fatal heart attack) did result from the employment . . . ." 215 Tenn. at 312, 385 S.W.2d at 747.

Appellee cites a number of other cases in which recovery has been allowed. *E. g., R. E. Butts Co. v. Powell*, 225 Tenn. 119, 463 S.W.2d 707 (1971), where a truck driver experienced chest pain while securing a cargo with chains. The activity was found to have aggravated a previous arteriosclerotic heart condition. *See also Cortrim Manufacturing Co. v. Smith*, 570 S.W.2d 854 (Tenn. 1978); *Lawrence County Highway Department v. Hardiman*, 531 S.W.2d 792 (1975).

In the case of *P & L Construction Co. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978) the Court said:

"In a workmen's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident 'could be' the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury."

Divergent results have been reached in many cases involving heart disease, depending upon the lay and medical testimony presented. Each case presents a question of fact to be determined by the trial court. In the present case, in our opinion, the conclusions reached by the trial judge that the decedent was experiencing a heart attack while working for his employer and that his work aggravated or enhanced pre-existing heart disease, ultimately resulting in death, are reasonable deductions from the testimony of the witnesses. We are

unable to conclude that the record is totally devoid of material evidence to support the judgment of the trial court a conclusion which we would have to reach in order to reverse its decision.

In resolving the issues in favor of the claimant, the trial judge made the following statement which is the subject of the employer's second assignment of error and which has given us great concern. Referring to the medical testimony he said:

"I have a split here; and, in my opinion, where I have such a split, I believe that taking the basis of the Workmen's Compensation Statute which is: 1. That it is to be construed, I think, mostly liberally in favor of the workman; that if there is a doubt as between two testimonies, such as this, *that I must travel with that which is more favorable to the Plaintiff* . . . ." [Emphasis added].

This is a serious distortion of the function of a trial judge, whose decision on factual issues in workmen's compensation cases is all but conclusive because of the limited scope of appellate review provided in T.C.A. § 50–1018.

The function of a trial judge in deciding workmen's compensation cases is no different from that in any other civil action. The burden of proof rests upon the party claiming the benefits of the Workmen's Compensation Act to establish the claim by a preponderance of all the evidence. An award may not be based upon conjecture; it must be based upon material evidence, and the rules of evidence are applicable. Nothing in the Workmen's Compensation Act directly or indirectly requires a trial judge to depart from his traditional and important functions in weighing evidence and resolving conflicts therein. Testimony of witnesses should be evaluated in these cases, as in all others, upon the basis of the reasonableness or unreasonableness of the testimony given, the interest, bias, prejudice or lack thereof on the part of the witnesses, their general credibility, their opportunity to see and observe and all of the other standards and criteria applicable to factual decisions in a non-jury civil action.

For a trial judge to depart from these and to assert that he is required by the Workmen's Compensation Act to "travel with" the testimony which is more favorable to the claimant distorts the foregoing principles and is inconsistent with them, particularly those pertaining to the burden of proof.

It is well settled that the courts are required to give an equitable construction to the workmen's compensation statutes themselves. T.C.A. § 50–918 expressly so requires. In its decisions over the years this Court has scrupulously and conscientiously adhered to the provisions of that statute and has undertaken to see that they are complied with. In doing so, and particularly in giving its rationale for appellate decisions, the Court has frequently made reference to a liberal interpretation or construction of the Act. Properly construed, however, these statements refer to the coverage of the Act, not to questions of burden of proof or accepting the testimony of witnesses for one side as against those of the other.

We recognize, as pointed out by the appellee, that this Court has gone so far in some cases as to state:

"This Act is remedial and is to be liberally construed in favor of those entitled to its benefits (T.C.A. sec. 50–918), and any reasonable doubt as to whether an injury arose out of and in the course of employment is to be resolved in favor of the employee or his dependents." *Shubert v. Steelman,* 214 Tenn. 102, 108, 377 S.W.2d 940, 943 (1964).

In that case, however, the issue was whether an injury was accidental or whether it was the result of intentional misconduct or self-inflicted. The statement was repeated in the case of *Williams v. Preferred Development Corp.,* 224 Tenn. 174–177, 452 S.W.2d 344 (1970), as a part of the appellate court's rationale in affirming a judgment awarding compensation where the decedent had been accidentally shot by another employee while at his place of employment.

Similar statements are found in numerous other cases and in various contexts, some of them involving the excusing of notice or other statutory formalities and some of them even involving issues of causation.

Nothing in any of the cases, however, in our opinion, justifies a trial court in concluding that the workmen's compensation statute itself, or a liberal interpretation thereof, imposes a duty upon him that he "must travel" with the witnesses favorable to the employee and reject countervailing testimony. All of the evidence offered in the trial court must be weighed and valued by the trial judge and a proper resolution thereof made according to the fundamental principles above delineated and not because of any legal requirement that they be resolved in any particular way by the provisions of the Workmen's Compensation Act.

Because the trial judge apparently felt that he was required by law to resolve the conflicting medical testimony in this case in a particular way, considerable doubt is cast upon the rationale he utilized. He went further, however, and stated that he accepted the testimony of the attending physician over that of the independent expert offered by appellant, finding the testimony of the attending physician to be consistent with the patient's case history. This was his prerogative, and we find no reversible error in the conclusion which he ultimately reached.

Accordingly the judgment of the trial court is affirmed at the cost of appellant, and the cause is remanded to that court for such further orders as may from time to time be necessary.

BROCK, C. J., and HENRY, COOPER and FONES, JJ., concur.