**Loyd TENPENNY, Plaintiff–Appellee,**

v.

**BATESVILLE CASKET COMPANY, INC., Defendant–Appellant.**

Supreme Court of Tennessee, at Nashville.

Dec. 4, 1989.

Thomas A. Wiseman III, North & Gideon, Nashville, for defendant-appellant.

H. Thomas Parsons, Parsons & Nichols, Manchester, for plaintiff-appellee.

OPINION

FONES, Justice.

This is a direct appeal from the chancery court's judgment awarding the plaintiff Workers' Compensation benefits. The Chancellor found the defendant liable for benefits for fifty-percent permanent partial disability to the body as a whole. The defendant appeals on two grounds: (1) the trial court erred in finding that the plaintiff had complied with the notice requirement of Tenn.Code Ann. § 50–6–201 and (2) the trial court erred in awarding the plaintiff certain medical expenses that were not authenticated as reasonable and necessary by a health care provider.

Loyd Tenpenny was fifty-two years old in 1987 when he worked for the defendant, Batesville Casket Company. Tenpenny had been a truck driver for Defendant for fourteen years when he fell and injured himself while getting out of a truck on 5 October 1987. Tenpenny was in Alabama on his way home from a delivery he had made for Defendant. It had been raining, so the truck was wet. When getting out of the truck for a break, Plaintiff slipped and fell on his hip and elbow. He drove the next five hours home while the injury began hurting more. The next morning the pain was so bad he had trouble getting out of bed. He was sure that the pain was the result of his fall. He called Pat Moulder, Defendant's nurse, to inform her he was not coming into work.

The evidence begins to conflict at this point. On direct examination, Tenpenny testified as follows:

Q   What did you tell Ms. Moulder?

A   That I had to have some relief.

Q   Did you tell her what had happened?

A   I don't know whether I did or not.

On redirect he testified as follows:

Q   Tell us whether or not you ever told Pat Moulder how you got hurt.

A   I told Pat how I slipped and fell out of the truck.

Q   When did you tell her that?

A   The day I went to [Dr.] Terry [McClarney] I called her back and told her.

. . . .

Q   I don't know if I'm understanding it or not, but did you tell Pat Moulder how you got hurt?

A   Yes.

Q   When? When did you tell her that?

A   I believe it was the day I filled out those insurance papers.

The first day that Plaintiff went to see Dr. McClarney concerning this injury was 6 October 1987. It was not until 12 October 1987 that he filled out the insurance papers.

Plaintiff's wife, Beada Tenpenny, testified that on 6 October 1987 she heard Plaintiff's conversation with Nurse Moulder. She stated that Plaintiff told Moulder that "he needed to get medical attention because he was hurt when he fell getting out of the truck."

Pat Moulder testified that she had no independent recollection of Plaintiff's call, but she did take notes during the call on what the conversation entailed. She kept files on all employees, which included notes from telephone conversations. According to Moulder's notes, Plaintiff did not mention that his injury was work related. Nurse Moulder routinely would handle all insurance claims—work injuries and non-work injuries. If the injury was not work related, the employee would fill out a Sickness and Accident Benefit Application. If the injury was work related, Nurse Moulder would fill out the Tennessee Employer's First Report of Work Injury. In this case, a Sickness and Accident Benefit Application was completed. The Application specifically asks, "Is disability work related?" Plaintiff marked the "no" box.

Plaintiff's experience with the two forms is also disputed. He admitted to applying for Sickness and Accident benefits five times from 1980 through 1986. On all the forms he answered "no" to the question of whether the disability was work related. He also admitted to understanding the difference between a work related disability and a disability that is not related to work. However, he does not admit to applying for Workers' Compensation benefits before. Defendant introduced into evidence a First Report of Work Injury from January of 1985. The form is typed and does not have a space for the employee's signature. Plaintiff admits to falling on ice during work in January of 1985 but says he did not file a workers' compensation claim. He testified as follows:

Q   You were also aware, weren't you, Mr. Tenpenny, before October 5 of 1987 when you slipped and fell that there's a difference between benefits

available for workers' compensation when you suffer an injury on the job and benefits available under the sickness and accident plan? You were aware of that, weren't you, sir?

A  Not really, no, sir.

Q  You had actually submitted a work-related claim to Batesville, hadn't you, sir, back in January of 1985 when you were walking down the ramp and slipped on ice and snow and fell?

A  But it wasn't workman's comp.

Q  Don't you remember reporting to the company, sir, that you had slipped down the ramp and fallen and you went to the nurse's station and told them what had happened?

A  Yeah, I told Ms. Moulder.

Q  Didn't you know, sir, at the time that they submitted that claim that you made to the workers' compensation insurance company?

A  No, sir. . . .

For the injuries involved in this case, Plaintiff received Sickness and Accident benefits which were less than he would have drawn under Workers' Compensation. On 19 February 1988, Plaintiff's attorney wrote a letter to Defendant asking for Workers' Compensation benefits. On 22 February 1988, Defendant filed a First Report of Work Injury about the October 1987 accident.

Defendant refused to pay Plaintiff Workers' Compensation benefits claiming that Plaintiff failed to provide timely notice of a work related injury. This action ensued. At the end of the trial, Plaintiff offered into evidence Exhibit 13, a compilation of various expenses and cancelled checks. The chancellor admitted this exhibit into evidence without any testimony from any physician authenticating that they were necessary and reasonable.

The Chancery Court of Coffee County held that Plaintiff was entitled to a Workers' Compensation award of fifty-percent permanent partial disability to the body as a whole. On the notice issue, the chancel-lor stated, "You've got a close question. The statute says give the worker the benefit of the doubt, I think, or words to that effect. There is some confusion here . . . but Mrs. Tenpenny seems to be so emphatic that he did report it on that particular day. I'm going to give him the benefit of the doubt and I'm going to give him 50 percent disability." Defendant brings this appeal challenging the chancellor's rulings on notice and on Exhibit 13.

I.

The defendant contends that its former employee did not comply with the statutory requirements of Tenn.Code Ann. § 50–6–201 (1980). The statute states:

Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation which may have accrued under the provisions of the Workers' Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compensation shall be payable under the provisions of this chapter unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

There is no claim that written notice was timely given, so the issue is whether the employer had actual notice. To be effective, actual notice must have arisen within 30 days after the occurrence of the accident. *Meade–Fiber Corp. v. Starnes*, 147 Tenn. 362, 368, 247 S.W. 989, 991 (1922). The test for measuring actual notice was given in *Masters v. Industrial Garments Mfg. Co.*, 595 S.W.2d 811 (Tenn.1980). This

Court held, "[A]n employee who relies upon alleged actual knowledge of the employer must prove that the employer had actual knowledge of the time, place, nature and cause of the injury." *Id.* at 815. More simply, the communication "must be calculated to reasonably convey the idea to the employer that the employee claims to have suffered an injury arising out of and in the course of her employment." *Id.* at 816.

Defendant relies upon several facts in support of its contention that it had no actual notice of Plaintiff's claim of a work related injury. These facts are Nurse Moulder's testimony, the insurance form Tenpenny filled out several days after this accident, and the previous insurance claims Tenpenny had made. Nurse Moulder testified that the day after the accident Plaintiff called her saying he was going to the doctor for relief from back pain. There is no indication in her notes that Plaintiff told her he was injured while working. Several days later, Plaintiff obtained the application form used for non-work related injuries. When asked on the form if his disability was work related, Tenpenny answered "no." Defendant claims that with his past experience with the two different types of benefits (work related and non-work related), Plaintiff fully understood that he was claiming insurance benefits designated for sicknesses and accidents not related to his employment.

Plaintiff counters these facts with his and his wife's testimonies evidencing that he gave Nurse Moulder actual knowledge of a work related injury when he called her the day after the accident. Nurse Moulder stated that she does not remember the conversation and that she was totally relying on her notes that she made that day. Her notes stated, "Phone call from Loyd. Back pain again. To Dr. McClarney today and is to stay off two weeks. Authorized me to sign his LOA [Leave of Absence]." However, on cross examination, Nurse Moulder admitted that she could have made a mistake considering Plaintiff's extensive past history of back problems. She testified as follows:

Q  Do you think that it might be possible that it was your assumption that this was a continuation of his previous problem, just the same old thing?

A  Yes, sir, because he had quite a bit of trouble.

With respect to the experience Plaintiff had with the two types of insurance benefits, Plaintiff testified that he did not understand the difference in where the benefits originated.

Appellate review of findings of fact by the trial court is de novo upon the record accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (1988) and *Alley v. Consolidated Coal Co.,* 699 S.W.2d 147 (Tenn.1985). The trial judge carefully weighed the conflicting evidence and found that Plaintiff had informed the company nurse that he was injured when he fell from the company truck.

It should be noted that on Dr. Terry McClarney's Patient Progress Report, there is a notation concerning Tenpenny's October 6 visit. It states, "10–5–87 [Lloyd Tenpenny] fell from truck landing on l[eft] elbow and l[eft] hip." While this is not evidence of notice to Defendant because it did not receive this report, the doctor's record adds credibility to the Tenpennys' testimonies.

■  Considering all the conflicting evidence and the standard of review, we affirm the trial court's finding on notice because a preponderance of the evidence is not otherwise.

The defendant urges this Court that this issue is controlled by the holdings in *Masters v. Industrial Garments Mfg. Co.,* 595 S.W.2d 811 (Tenn.1980) and *Duke v. ITT Telecommunications Corp.,* 655 S.W.2d 950 (Tenn.1983). This case is distinguishable from *Masters* and *Duke,* both of which held that no actual knowledge existed. In *Masters,* the employee and her union representative asked the employer for the assistance of a "bundle boy" because the lifting

of bundles was too strenuous for her. She did not communicate that she was injured nor did she ask to see a doctor. In *Duke*, the communication consisted of telling the employer that the employee was "in a bad shape with his back." The plaintiffs in *Duke* and *Masters* did not communicate to their employers that they were injured *and* that they were injured during their employment. In this case, Tenpenny told Nurse Moulder that he was injured *and* that he was injured when he fell getting out of the truck. This communication reasonably conveyed the idea to the employer that the employee claimed to have suffered an injury arising out of and in course of his employment.

Defendant also claims that the Chancellor erred in giving the plaintiff the "benefit of the doubt." No argument was made nor any authority cited in support of that assertion of error. We assume that Defendant's position is that Tenn.Code Ann. § 50–6–116 (1980), declaring the act to be "remedial" and requiring that it be given an "equitable construction ... to the end that the objects and purposes of this chapter may be realized", should not be applied to the traditional function of weighing evidence and resolving conflicts therein. In fact, that is what this Court held in *Parker v. Ryder Truck Lines, Inc.*, 591 S.W.2d 755 (1979). There the trial judge said that "if there is a doubt as between two testimonies, such as this, that I must travel with that which is more favorable to the plaintiff." *Id.* at 759. Obviously, "must travel with" represents a wider margin of error than "benefit of the doubt" but either represents an inappropriate application of the equitable construction statute, for the reasons that Justice Harbison so clearly and carefully delineated in *Parker*. However, here as in *Parker* the trial judge gave an additional unassailable reason for resolving the credibility issue in favor of Plaintiff's position. In the instant case, it was the "emphatic" testimony of Mrs. Tenpenny that she heard Plaintiff tell the company nurse that he needed medical attention because he was hurt "when he fell getting out of the truck." In addition to that reason, this Court is persuaded that the trial judge correctly resolved that issue because reason and logic and human behavior patterns support the conclusion that Plaintiff would give the same information to his employer that he gave to his doctor, particularly when the two reports were within a very short time frame, and no conceivable reason exists for withholding from his employer the fact that his injury resulted from a fall getting out of the company truck.

## II.

The defendant also contends that the Chancellor erred in admitting into evidence medical expenses without the testimony of physicians stating that they were necessary and reasonable.

At the end of all the proof, Plaintiff entered Exhibit 13, a compilation of various expenses and cancelled checks. The defense attorney responded, "You can enter it into the record, sure. I don't object to that. I'm not sure it gets you anywhere given the standard, but if you want to enter it into the record, that's fine." The standard that defendant cites in his brief is that medical expenses must be proven to be "reasonable and necessary." An employer's liability is limited to "such charges as prevail for similar treatment in the community where the injured employee resides." Tenn.Code Ann. § 50–6–204(a)(4) (1989).

However, the employee does not always have the burden to prove that the medical expenses were reasonable and necessary. In *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn.1983), we held that "the employee should not bear the burden of establishing the necessity of medical treatment or the reasonableness of medical charges when the employer has designated the physician or the employer's designate refers the claimant to other specialists." This Court ruled, "[T]here should be a presumption that treatment furnished by physicians designated by the employer is necessary and the charges reasonable. The employer has the burden of persuading the

court to the contrary." *Id.* As a result, if the expenses in this case were from physicians designated by Batesville Casket Company then Plaintiff did not need proof on reasonableness and necessity and the Chancellor should be affirmed.

■ Exhibit 13 contains prescription records and cancelled checks made out to various doctors and medical groups. However, it is not necessary to determine whether these expenses were attributable to designated physicians because Defendant failed to object to this evidence on the correct ground. (It should be noted that some of the same doctors that were seen in this case were consulted in past Sickness and Accident claims and that this record reveals no complaint by Defendant about these doctors and health care providers.) Neither Plaintiff nor Defendant presented evidence on whether these physicians were designated by Defendant. Thus, the record is silent on this issue. This Court dealt with a very similar situation in *Williams v. Delvan Delta, Inc.*, 753 S.W.2d 344 (Tenn.1988). We addressed this issue as follows:

> The record in this case is silent as to whether or not any of the physicians that treated plaintiff were designated by the employer or plaintiff was referred to by a designated physician. It is elementary that where an employee seeks the advantage of the presumption created in *Russell*, the employee has the burden of showing that the treating physicians were designated by the employer or doctors selected by a designated physician.
>
> In this case, when plaintiff presented her numerous medical bills, defendants objected on the ground that plaintiff was not competent to prove that those charges were necessary and reasonable. However, under *Russell*, plaintiff was entitled to show that she had incurred those medical expenses if they were incurred at the instance of the employer's doctors or doctors to whom she had been referred. Thus defendants' objection was not made on the proper ground.

> If defendants had objected on the proper ground, to-wit: that plaintiff had failed to show whether the treating physicians were designated or selected by designated physicians, evidence could have been presented for an appropriate resolution of those issues. Under these circumstances, defendants have waived consideration of this issue.

In this case, Defendant's only objection was that the "standard" concerning necessary and reasonable expenses was not met. Thus, Defendant has waived consideration of the issue on whether the treating physicians were designated.

In conclusion, the judgment of the trial court is affirmed. Costs are adjudged against the Defendant.

DROWOTA, C.J., and HARBISON, COOPER and O'BRIEN, JJ., concur.