FILED

February 25, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:56 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| LINDA MILLER,<br>   Employee,<br>v.<br><br>WE CARE SERVICES/COMFORT KEEPERS,<br>   Employer,<br>And,<br><br>ACCIDENT FUND INS. CO.<br>   Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2015-08-0326<br><br>State File Number: 37214-2015<br><br>Judge Allen Phillips |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on February 3, 2016, upon the Request for Expedited Hearing filed by the employee, Linda Miller, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Ms. Miller seeks medical and temporary benefits for an alleged injury to her arms. Comfort Keepers asserts that if Ms. Miller has sustained any injury, then the date of injury is *correctly dated* April 12, 2015. Accident Fund contends that Ms. Miller has failed to establish causation of her injury but, if she has, then the date of injury *is not* April 12, 2015, but rather a later date.

The central legal issues are: one, whether Ms. Miller has established that her injury arose primarily from her employment and two, the correct date of injury. For the reasons set forth below, the Court finds Ms. Miller has not come forward with sufficient evidence at this time to show her injury arose primarily out of and in the course and scope of her employment and, accordingly, will not prevail at a hearing on the merits in establishing entitlement to the requested benefits. Because of this finding, the Court need

1

not decide the precise date of injury.[1]

## History of Claim

Ms. Miller is a fifty-three-year-old resident of Shelby County, Tennessee who had worked for Comfort Keepers as a home health care professional since 2005. Her duties included preparing meals, housekeeping, and personal care of homebound patients.

Comfort Keepers filed a Petition For Benefit Determination on August 13, 2015, and listed under "Disputed Issues" the following: "Accident Fund has denied the claim stating the injury occurred outside of our coverage period. Our coverage ended May 1, 2015. The injury occurred 4/12/15, but was reported late to employer."[2] Ms. Miller agreed with the April 12, 2015 date of injury; Accident Fund did not. After an unsuccessful mediation, the mediator issued a Dispute Certification Notice (DCN) listing several disputed issues. The controlling issue here is causation.[3]

Ms. Miller testified she had worked primarily at the home of the same client for approximately six months prior to her alleged injury. Including both her care of the primary client and some additional work with another client, Ms. Miller claimed to have worked as much as seven days per week for twelve hours each day. Though an assistive device was available to lift her bed-ridden client, she was required physically to "turn" the client. The turning of the client, either repetitively, or perhaps on one undefined occasion, is the basis for Ms. Miller's claim of injury to her arms.

Ms. Miller stated in an affidavit supporting her hearing request that she, "on or about April 12, 2015 . . . experienced a specific event causing injury including, but not limited to, my right wrist during the course and scope" of her work with Comfort Keepers. (Ex. 2). However, at the hearing, she testified the injury happened "sometime in April" and was "around April 12." On cross-examination, she admitted she did not tell Comfort Keepers of a specific incident on April 12 and, moreover, did not know where the April 12 date "came from." But, she did testify to having carpal tunnel syndrome in the past and that her pain in April was "different." These changed symptoms prompted her to buy a wrist brace in April and ultimately, on May 10, 2015, report to Comfort Keepers that she had sustained an injury.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] As discussed hereafter, the actual date that Accident Fund's coverage ended was May 2, 2015, rather than May 1, 2015. Further, the evidence presented did not establish that Ms. Miller provided late notice under law despite the characterization by Comfort Keepers of the injury being "reported late"; Ms. Miller reported an alleged injury within thirty days of its occurrence. Tenn. Code Ann. § 50-6-201(2015).

[3] The DCN also listed as disputed issues whether Tennessee has jurisdiction over the claim, the date of alleged injury, whether Ms. Miller is entitled to medical and/or temporary disability benefits, whether Ms. Miller is entitled to payment of past medical expenses and proper calculation of the compensation rate.

Comfort Keepers presented testimony from Ms. Jessica Tate, its benefits coordinator, who confirmed that Ms. Miller called Comfort Keepers' telephone reporting number May 10, 2015. In her message, Ms. Miller reported she had injured herself in April 2015. On May 11, 2015, Ms. Miller advised Ms. Tate directly that she sustained an injury "several weeks ago" when turning a client.

Ms. Miller testified that Ms. Tate directed her to see Baptist One Care for evaluation. Ms. Miller reported to a nurse practitioner at Baptist that she had pain in both wrists. She further stated she "regularly lifts and turns patients at her work but does not recall any specific injury causing these symptoms. The pain started one week ago and became severe three nights ago." (Ex. 3 at 2). At the hearing, Ms. Miller did not recall discussing a specific injury with the provider. The diagnoses were a right wrist contusion and left wrist strain. *Id.* at 6.

She returned to Baptist one week later and reported to a physician that her pain began one month earlier and occurred at work because of repetitive motion. (Ex. 3 at 7). The diagnoses were right wrist and left thumb pain. *Id.* at 9. Because of the persistence of the reported problems, the physician recommended an orthopedic referral. *Id.* at 11. Accident Fund paid for the care at Baptist, provided a panel of orthopedic specialists and scheduled an appointment with the chosen specialist. Before Ms. Miller attended the orthopedic appointment, Accident Fund denied her claim. Accident Fund's adjuster, Janette Mayer, stated in an affidavit that Ms. Miller's history at Baptist on May 12 was, "there was no specific injury and the onset of symptoms was one week prior." (Ex. 6 at 2). Accordingly, Accident Fund took the position that Ms. Miller's claim arose after its coverage ended since her symptoms began only one week before May 12, 2015.

On May 29, 2015, Ms. Miller saw Dr. Christian Fahey, the orthopedic surgeon chosen from Accident Fund's panel, on her own. Dr. Fahey noted Accident Fund on the record and recorded Ms. Miller's history of right wrist pain since "April 2015." (Ex. 3 at 16). She recalled no injuries "except for lifting patients" and recalled a "specific event lifting a patient [but] she is not sure when." *Id.* Dr. Miller diagnosed a cervical strain and recommended therapy for her neck. He noted that, "[her] wrists should improve on their own." *Id.* at 17.

After the visit to Dr. Fahey, Ms. Miller continued care on her own. She saw Dr. Kallol Saha at Nova Medical Center on June 10, 2015, and reported, "lifting and turning patients caused radiating pain and numbness in hands." (Ex. 3 at 20). Dr. Saha diagnosed a cervical strain and bilateral tenosynovitis of the hands and wrists. *Id.* at 21. Return visits on June 16 and June 23, 2015, note identical histories and diagnoses. *Id.* at 24 and 28.

On June 29, 2015, Ms. Miller saw Dr. Nahum Beard, an orthopedic surgeon. (Ex. 3 at 33). Her history was a gradual onset of "pain in the hand and wrist" that had "been

going on since April." Dr. Beard diagnosed diffuse tenosynovitis of the right wrist and recommended conservative care. *Id.* On July 30, 2015, he noted she requested his opinion regarding "some numbness and tingling that has been going on in the left hand . . . for close to a year." (Ex. 3 at 35). Dr. Beard noted cervical osteoarthritic changes with "presumed . . . chronic radiculitis" and obtained nerve conduction studies that revealed mild cubital tunnel syndrome and residuals from an earlier carpal tunnel syndrome. *Id.* at 36. He later injected the tenosynovitis-affected areas of the right hand on two occasions. Ultimately, on September 4, 2015, he released Ms. Miller to return as needed with a final diagnosis of tenosynovitis and "left-sided mild cubital tunnel symptoms that have markedly improved." *Id.* at 37.

The parties placed no other medical records into evidence. Ms. Miller testified that another physician, a Dr. Callandruccio at Campbell Clinic, had recommended surgery. To date, she has had neither surgery nor any further medical treatment.

Ms. Tate confirmed Ms. Miller worked for Comfort Keepers until May 13, 2015, and then worked on light duty until July 2, 2015. From July 21, 2015, until November 8, 2015, she worked at full duty. In November 2015, Ms. Miller encountered additional problems with her hands and also problems with her back. Ms. Tate confirmed that, as of the date of the hearing, Ms. Miller remained an employee of Comfort Keepers, but the company currently did not have an assignment available for her.

Ms. Miller contended this proof established an injury resulting from her work at Comfort Keepers. She argued that neither Comfort Keepers nor Accident Fund offered proof as to any other cause of her injuries. Further, the medical records "repeatedly" addressed repetitive trauma, and those records establish an injury arising out of and in the course of her employment. For its part, Comfort Keepers argued that Baptist's note from May 12, 2015, is insufficient to establish causation of an injury in early May 2015 because a nurse practitioner generated the note.[4] However, the remaining medical evidence establishes an injury date of April 12, 2015, and is a sufficient basis for the Court to "rule in the employee's favor" that she would likely prevail on causation at a full hearing. Finally, Accident Fund argued that there was no specific incident reported after the May 19, 2015 Baptist note, and if the injury is indeed gradual, then it cannot be Accident Fund's responsibility under the last-day-worked rule. Regardless, it argued there is no medical evidence of a compensable injury.

**Findings of Fact and Conclusions of Law**

Because this case is in a posture of an Expedited Hearing, Ms. Miller need not

---

[4] The Court agrees that "a nurse practitioner is not an expert who can testify as to medical causation." *See, e.g., Hinson v. Claiborne & Hughes Health Ctr.*, No. M2006-02306-COA-R3-CV, 2008 Tenn. App. LEXIS 105, at *15 (Tenn. Ct. App. Feb. 26, 2008). However, this argument is not dispositive given the finding of inadequate medical causation; regardless, there is no "opinion" regarding causation in the nurse's note of May 12, 2015.

4

prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether she has met her burden, the Court will not remedially or liberally construe the law in her favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Ms. Miller nor Comfort Keepers and Accident Fund. *See* Tenn. Code Ann. § 50-6-116 (2015). Based upon the evidence at this time, the Court finds Ms. Miller has not shown she is likely to prevail at a hearing on the merits regarding causation and, accordingly, denies her request for benefits.

To be compensable, Ms. Miller must show that her alleged injury arose primarily out of and in the course and scope of her employment. Tenn. Code Ann. § 50-6-102(14) (2015). She must also show her injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, she must show, "to a reasonable degree of medical certainty that [her alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Upon careful review of the records, the Court finds no opinion from a treating physician that Ms. Miller's alleged injuries are more likely than not related to her work at Comfort Keepers. The records of both Baptist One Care and Dr. Fahey do contain references to an alleged injury while turning patients. Likewise, in the records of Dr. Saha, Ms. Miller reported that, "lifting and turning patients caused radiating pain and numbness in [her] hands." (Ex. 3 at 24). Finally, when she saw Dr. Beard at Campbell Clinic, she reported a "gradual onset" of pain in the right wrist which had "been going on . . . since April." (Ex. 3 at 33). While these records for the most part establish complaints of pain from the turning of patients, and arguably establish the date of onset in April 2015, they contain no medical expert opinion that the injuries of which Ms. Miller complains arose primarily out of her employment.

Ms. Miller also contends that neither Comfort Keepers nor Accident Fund came forward with any other possible causes of her alleged injury. This argument cannot prevail; neither the employer nor the carrier is required to prove an alternative cause. Rather, Tennessee law is well-settled that the employee bears the burden of establishing all elements of her claim, including medical causation. *Parker v. Ryder Truck Lines, Inc.*,

5

591 S.W.2d 755, 759 (Tenn. 1979).[5] Our Appeals Board recently stated, "[w]ith respect to the element of medical causation, it was traditionally the employee's burden to offer expert medical proof of causation '[e]xcept in the most obvious, simple and routine cases.'" *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015), *citing Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008). The injury in this case is not so obvious as to remove the need for expert proof of causation. Further, in *Scott,* our Appeals Board noted that:

> [F]or injuries before July 1, 2014, an injured employee could satisfy her burden of proof of medical causation by offering expert medical testimony that a work accident 'could be' the cause of the employee's medical condition, when there was corroborating lay testimony from which it could reasonably be inferred that the incident was in fact the cause of the injury. *See, e.g., Hill v. Eagle Bend Mfg.,* 942 S.W.2d 483 (Tenn. 1997). The analysis in such cases was predicated on expert medical testimony combined with corroborative lay testimony. Thus, even under pre-reform law, *lay testimony alone was insufficient in most cases to establish adequate evidence of medical causation.*

*Scott,* at *11(emphasis added).

Ms. Miller cannot rely upon her own testimony because it is she who must establish causation and her "lay testimony . . . without corroborative expert testimony, [does] not constitute adequate evidence of medical causation." *Scott,* at *12. She must "secure expert opinions or other evidence necessary to address any applicable burden of proof." *Pool v. Jarmon D&Q Transport,* No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at *10 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016).

Given the totality of the evidence at this time, the Court is unable to find that Ms. Miller has come forward with sufficient evidence to show she would likely prevail at a hearing on the merits and denies her request for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Miller's claim against Comfort Keepers and Accident Fund for the requested medical and temporary benefits is denied at this time.

---

[5] In cases where the Supreme Court has addressed a causation issue not based on the remedial nature or liberal construction of the prior Act, this Court is bound by the Supreme Court's analysis. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *7 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

2. This matter is set for an Initial (Status) Hearing on April 6, 2016, at 9:00 a.m. Central time.

**ENTERED this the 25th day of February, 2016.**

_____

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 901-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Baptist Work Status Report
2. Affidavit of Linda Miller
3. Medical Records of:
    - Baptist One Care
    - Baptist Minor Medical
    - Memphis Orthopedic Group
    - Nova Medical Centers
    - Campbell Clinic
4. Wage Statement
5. Accident Reports
6. Affidavit of Janette Mayer (with attachments)


Technical record:

1. Petition for Benefit Determination, filed on August 13, 2015
2. Dispute Certification Notice, filed on September 10, 2015
3. Request for Expedited Hearing, filed on November 5, 2015
4. Affidavit of Linda Miller
5. Ms. Miller's Brief
6. Comfort Keepers' Brief
7. Accident Fund's Brief[6]

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence. Employee made an Exhibit of her Affidavit.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Andrew McClelland, Employee's Counsel | | | X | Andrew@calljmb.com |
| Stephen P. Miller, Employer's Counsel | | | X | smiller@mckuhn.com |
| Cole B. Stinson, Carrier's Counsel | | | X | Cole.stinson@accidentfund.com |

*Penny Shrum*

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**