**Estel OWENS, Appellee,**

v.

**CNA INSURANCE
COMPANY, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 2, 1986.

Richard W. Krieg, Morton, Lewis, King & Krieg, Knoxville, for appellant.

Heiskell H. Winstead, Rogersville, for appellee.

OPINION

FONES, Justice.

This is a worker's compensation case in which defendant CNA Insurance Company appeals from the judgment of the trial court awarding plaintiff benefits for an alleged work-related back injury. Defendant raises a number of issues that have merit: failure to give notice of an accident and injury, if any occurred; statute of limitations; failure to disclose a prior back injury on his employment application; incurring medical expenses with doctors of plaintiff's own choosing without notice to or request of employer for medical aid and the awarding of future temporary total disability if and when plaintiff elects to have a surgical procedure. We find that plaintiff's failure to give notice of the accident and injury is fatal to his claim, reverse and dismiss.

Plaintiff Estel Owens was employed as a heavy equipment operator by Charles Blalock & Sons, Inc. Plaintiff testified that while on a job for said company at the Sevierville airport on 16 April 1982, he was using a pick and shovel to dig out a broken water line when "a pain ... hit [him] in the back." Plaintiff testified that he continued to work "almost to dinner" when the pain intensified and he "reported it to Raymond," his supervisor, who sent him home. Plaintiff stated that he remained off work "around three or four days," but that he did not seek medical attention.

Plaintiff testified that he returned to work "a little sore," but thinking his injury was not "anything serious." Plaintiff said that his condition worsened until he "walked mostly sort of bent over" and he "couldn't get up and down on the [roller compactor] machine." According to plaintiff, he requested a layoff sometime prior to 4 July 1982 to see if his back would improve with a few weeks' rest. Plaintiff was not able to return to work in two or three weeks as he had anticipated, and, in fact, did not work again until 13 October 1984.

Plaintiff first sought the services of a chiropractor, Dr. Rooney, on 7 July 1982. On 13 July 1982, plaintiff, feeling that he had not improved, sought the services of a Rutledge physician, Dr. Bryan, who prescribed pain medication and referred him to Dr. William J. Gutch, an orthopedic surgeon.

Doctor Gutch testified that he first saw plaintiff for his presently alleged back injury on 19 July 1982. Doctor Gutch recounted plaintiff's complaints of lower back and left hip and leg pain and numbness in the lower left extremity. Doctor Gutch testified that he diagnosed "a probable herniated disc at the L4 or L5 level" and advised plaintiff to make arrangements for admission to the hospital for a myleogram and possible laminectomy. Doctor Gutch indicated that when plaintiff responded that he was not covered by insurance, he performed a lumbar tap and injected a cortisone preparation into the spinal canal to help relieve plaintiff's symptoms. Doctor Gutch also placed plaintiff on a muscle relaxant, an anti-inflammatory drug, and a pain medication.

Doctor Gutch testified that he next saw plaintiff on 20 August 1982, after plaintiff "had seen the vocational rehabilitation to try to get some medical coverage or hospitalization coverage." Doctor Gutch made x-rays on that occasion, reiterated his initial diagnosis, and, again, suggested that plaintiff "enter the hospital for a myelogram and probable laminectomy."

Plaintiff was hospitalized on 10 November 1982 for a lumbar myelogram which confirmed Dr. Gutch's diagnosis. Doctor Gutch testified that plaintiff was temporarily totally disabled at the time, and that he recommended that plaintiff undergo a laminectomy "as soon as possible." Plaintiff, however, declined the surgical treatment and did not see Dr. Gutch again until 4 February 1985.

Plaintiff filed suit for worker's compensation benefits against Blalock Construction Company in Hawkins County on 12 June 1983. Plaintiff subsequently voluntarily non-suited the proceeding, apparently due to improper venue and the non-entity status of the sole named defendant. Plaintiff instituted the instant litigation against CNA Insurance Company in Hamblen County on 10 September 1983.

It is undisputed that no written notice was given. Plaintiff insists that what transpired between him and his supervisor, Raymond, on 16 April 1982, was actual notice to the employer of plaintiff's accident and injury. Plaintiff's version of what occurred follows:

Q. What happened to you?
A. I was using a pick when—digging out for the water line—when I hit the ground. A pain hit me in the back.
Q. What happened then?
A. Well, I worked on up until almost to dinner. Then it got a little worse on me, and I went and reported it to Raymond.
Q. You talked to Raymond, the gentleman that is outside that was your supervisor, you reported to him?
A. Yes, sir, I did.
Q. Okay. Now did you—did you continue to work that day?
A. No, he sent me home.

Plaintiff did not know Raymond's last name but he positively identified a person who had been sworn to testify at the beginning of the trial as the Raymond who was his supervisor on 16 April 1982. That person was Raymond Wilson who testified that on 16 April 1982 he was working in Jellico, Tennessee and did not work on the Sevierville job until 23 April or 30 April 1982; that plaintiff was working on the Sevierville project when he went there as supervisor in April; that at no time did plaintiff report an accident or injury or trouble with his back and the witness did not observe that he was having any trouble performing his work.

Frank Bright testified that he was the supervisor of the Sevierville job on 16 April 1982; that he had worked for Charles Blalock & Sons, Inc. for twenty-two years and the company provided supervisors with a diary to record daily what work was accomplished, any injuries sustained, however

slight, etc. Bright testified that plaintiff was working on the Sevierville job operating a compactor on 16 April 1982, but plaintiff did not report an accident or injury to him; that at the end of the day as he customarily did, he recorded that they excavated and placed fill on the Sevierville job and there was no record made of any injury to plaintiff.

Plaintiff testified that in 1971 he was working for Lear Siegler, sustained an on-the-job injury to his back and filed suit against his employer in Hamblen County. He acknowledged that he received three thousand dollars in worker's compensation as a result of that suit, apparently by court approved settlement.

In *Masters v. Industrial Garments Mfg. Co.,* 595 S.W.2d 811 (Tenn.1980), this Court said:

> An employee who relies upon alleged actual knowledge of the employer must prove that the employer had actual knowledge of the time, place, nature and cause of the injury. [citations omitted.] ... In order for a communication to constitute either written notice or actual knowledge on the part of the employer it must be calculated to reasonably convey the idea to the employer that the employee claims to have suffered an injury arising out of and in the course of her employment.

The trial judge did not decide the notice issue upon the basis of whether plaintiff's testimony that he reported it to Raymond and Raymond sent him home met the requirements of *Masters* under all the circumstances of this case. His analysis of the issue was as follows:

> The notice problem gives the Court a little bit of a problem. The Court has sat here and listened to the proof and tried to determine whether or not in fact—of course, we have heard testimony from Mr. Price that he was the foreman on this particular occasion on this date and in fact it was his last date on the job. He brought his record book in and it shows no record of any injury. Mr. Owens testifies to the fact that it was Mr.

> Raymond Wilson—and he says Raymond—I think it is established Mr. Raymond Wilson was the one he reported the incident to. He claims Mr. Wilson sent him home. It boils down to a good degree of credibility. This has been some time, '82, and here we are in '85, over three years later, trying to determine certain of these questions, which obviously if had been determined a year or so back would have been fresh on everyone's mind.

> I guess the problem boils down to whether or not, in fact, the Court believes Mr. Owens when he relates to the Court he, in fact, testified to giving the employer notice. There were no work records brought into the Court. The Court would have been interested, of course, to have seen whether the work records would have confirmed what, in fact, what Mr. Owens said or did not say.

> The Court finds that Mr. Owens is a credible witness, even in a case in which he, of course, has an interest in the outcome. The Court resolves the notice question in his favor.

While we think plaintiff destroyed his own credibility, if we assume that he reported "it" to his supervisor, that communication did not reasonably convey the idea to the employer that the employee claimed to have suffered an injury arising out of and in the course of his employment. Plaintiff insisted repeatedly that he did not know that he had a compensable injury until 10 November 1982 in spite of the fact that he was told by his doctor on 19 July 1982 that he probably had a ruptured disc, should make arrangements to enter the hospital for a myleogram and probable surgery. That testimony was not only in conflict with his doctor's testimony but also contradicted allegations in his complaint. His complaint avers in paragraph four that he "made a reasonable effort to find out about his back strain, but until July 19, 1982, he had no reason to believe that his condition was serious and that he had a compensable injury; that plaintiff's disability did not

manifest itself to plaintiff until July 19, 1982."

Plaintiff did not report anything to his employer, or seek any medical treatment from his employer's doctors, or make a worker's compensation claim within thirty days of either of those dates. According to his own doctor, plaintiff had been seeking medical and hospital coverage between the 19 July and the 20 August visits. Plaintiff offered no explanation for his failure to call upon his employer, Charles Blalock & Sons, Inc., to provide him with medical and hospital coverage, if indeed he had suffered a work related injury on 16 April 1982. The fact that his education ended in the sixth or seventh grade does not account for such failure where the record shows that he had a prior work related back injury, was treated by one Dr. Davis and was paid worker's compensation benefits in the sum of $3,000. The "it" that he says he reported to Raymond on 16 April consisted of "I was using a pick ... I hit the ground ... a pain hit me in the back." This occurred on Friday, was followed by his absence from work for three or four days the following week, without any explanation to his employer, then regular work for approximately two and one-half months. He then asked his employer to lay him off for two or three weeks, without any mention to his employer of any connection between the condition he says he sought a rest cure for and the 16 April pain in his back. Within two weeks thereafter Dr. Gutch told him of his probable ruptured disc, need for hospitalization, myleogram and possible surgery that brought sharply to his attention the need for medical and hospital coverage which he was bound to know from past experience was available if he had sustained a work related injury.

In *Masters*, we quoted the following from *Aetna Casualty & Surety Co. v. Long*, 569 S.W.2d 444, 449 (Tenn.1978):

> The reasons for the requirement as to notice of injury are to give the employer an opportunity to make an investigation while the facts are accessible and also to enable him to provide timely and proper treatment for the injured employee.

Assuming everything plaintiff testified to was true, what he says he communicated to Raymond on 16 April did not reasonably convey the idea that the employee had suffered an injury that might result in a compensable claim and did not give the employer the opportunity to investigate or provide timely and proper medical treatment. His failure to communicate to his employer his need of hospitalization and medical coverage under the circumstances of this case is incomprehensible. We find plaintiff has wholly failed to prove the elements necessary to constitute actual knowledge to the employer that he sustained a work related injury.

The judgment of the trial court is reversed and this case is dismissed. Costs are adjudged against plaintiff.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.