

FILED

February 9, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Dustin Chambers

EMPLOYER: Advantage Human Resources

INSURANCE CARRIER: New Hampshire Ins. Co. / Broadspire

DOCKET #: 2014-07-0018
STATE FILE #: 59773-2014
DATE OF INJURY: July 31, 2014

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Dustin Chambers (Mr. Chambers), the Employee, on December 9, 2014, with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239, to determine if the initiation of medical and temporary disability benefits is appropriate.

The Court conducted an evidentiary hearing on January 15, 2015. Mr. Chambers appeared with his Counsel, Jeffrey P. Boyd. Advantage Human Resources (Advantage), the Employer, and New Hampshire Insurance Company, the Carrier, appeared with their Counsel, Allen Callison. Mr. Chambers testified on his own behalf. Ms. Heather Tinker testified on behalf of Advantage. Advantage additionally offered the sworn affidavits of Mr. Eddie Carter and Mr. Robert Yarbrough.

Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds that Mr. Chambers properly reported an injury on July 31, 2014 and is entitled to a panel of neurosurgeons for evaluation. The Court further finds that Mr. Chambers is not entitled to temporary disability benefits at this time.

## ANALYSIS

### Issues

1. *Whether Mr. Chambers is entitled to a panel of neurosurgeons to evaluate his injury.*

2. *Whether Mr. Chambers is entitled to temporary benefits for the period of August 15, 2014 to present, and ongoing.*

1

## Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD)
- Dispute Certification Notice (DCN)
- Request for Expedited Hearing (REH)

The following documents were admitted into evidence by stipulation of the parties:

Exhibit 1: Affidavit of Dustin Chambers
Exhibit 2: Medical Records of Regional Hospital of Jackson and Madison Family Practice
Exhibit 3: Notice of Denial of Compensation (C-23)
Exhibit 4: Wage Statement and supporting documentation (comparable employee)
Exhibit 5: Affidavit of Robert Yarbrough
Exhibit 6: Affidavit of Eddie Carter
Exhibit 7: Advantage's "Injured Employee's Statement"

## History of Claim

Mr. Chambers worked for Advantage, a temporary employment agency, and assigned to ARJ Manufacturing (ARJ). On July 31, 2014, Mr. Chambers alleges an injury while moving a pallet. Advantage denied the incident occurred as well as any resulting anatomic condition.

Mr. Chambers is a 29-year old resident of Jackson with an 11th-grade education. He was assigned to work at ARJ as a "material handler." The job required him to move "tubs" with a cart and place them on pallets at the dock. On July 31, 2014, at approximately 3 AM, he proceeded to "the back of the dock" to retrieve a pallet. He testified that he previously received instruction from his trainer regarding the method to use to retrieve a pallet. He "jumped up and down" to knock a pallet from a high stack. The pallet stacked second from the top fell, striking his leg. Though he felt pain in his leg, he stooped to lift the pallet and then "drug it" behind him towards the dock area. While doing so, his back began hurting and the pain increased as he proceeded to his work area. He "laid the pallet down," then attempted to lift a tub, and felt excruciating pain in his lower and middle back toward the right side. His legs gave way and he remained on the floor for 10-15 minutes.

Mr. Chambers rose and used the cart "as a walker" to find Eddie Carter, his trainer. He reported the injury to Mr. Carter, who told him that "pulled muscles" are common in the job. Since Mr. Chambers was in-training, Mr. Carter directed him to simply sit and observe. Mr. Chambers stayed at ARJ for the remainder of his shift and then went home. He took an Epsom salt bath as recommended by Mr. Carter and tried to sleep. He returned to work the following evening, July 31, 2014, at 7:00 PM. He reported to Mr. Carter that he was still in pain and could not perform the material handling job. Mr. Carter spoke to another employee, who Mr. Chambers believes was a shift supervisor, to inquire if there were other jobs which Mr. Chambers might perform. Mr. Carter returned to advise that there were no other jobs available and then asked Mr. Chambers lift a tub to evaluate his ability to do so. Mr. Chambers could not lift the tub. He was then escorted to ARJ

2

employees, who advised that Mr. Chambers must wait for Mr. Savage, the shift supervisor, to advise of the availability of any other positions. When the shift supervisor failed to appear, Mr. Chambers returned to Mr. Carter and spoke to "another guy" who stated, "there was no reason for him to be here." Mr. Chambers left and went to Regional Hospital (Regional). While driving to Regional, Mr. Chambers called the Advantage toll free number to report the injury, without success.

The affidavit completed by Mr. Chambers is consistent with his direct testimony.

On cross examination, Mr. Chambers admitted that he had been terminated from another temporary agency in June 2014 after a criminal background check. He applied at Advantage on June 27, 2014. He admitted that during the application process he was asked whether he had any felony convictions. Mr. Chambers testified, in response to a question that he had misrepresented his record, that he had actually admitted prior felony convictions occurring in another state. Mr. Chambers admitted that he did not call Advantage to report the injury immediately upon its occurrence as instructed in a training session when he was hired just two days earlier. Mr. Chambers recalls being told that he might leave the plant on the evening of August 1, 2014 by a "large black man." He testified his prior back issues were a pulled muscle in 2007 and that he did not recall undergoing an MRI in June 2013. He denied that the symptoms in 2013 were low back pain but, instead he had pain in his right leg behind the knee cap.

Mr. Chambers presented at the Regional emergency room on July 31, 2014 at 11:04 PM. He reported low back and left leg pain "sustained at work." The symptoms began "acutely, today." He reported previous back pain and stated "it aggravated today at work by lifting heavy things." The emergency room providers diagnosed him with "Acute Low Back Pain" and discharged home. The emergency room providers further instructed him to follow up with a primary care physician in two to three (2 to 3) days. (Ex.2 at 2 and 7). [1]

On August 1, 2014, Mr. Chambers contacted Advantage, reported to the office, and completed a handwritten statement. Mr. Chambers listed the date and time of injury as July 31, 2014 at 3:00 AM. When asked on the statement, "what were you doing when the injury occurred", he stated:

I was pushing a load of totes to the dock. There wasn't a pallet so I went and got one from the dock. I grabbed the one on top which was a wood pallet. I then carried it to area where I needed it and I unload [sic] my totes.

When he was asked to "[d]escribe in your own words how the injury/accident occurred," he wrote:

After I got the pallet down and started to drag it to the area I started feeling pain in my back

---

1 The Court notes that Exhibit 2, a collective exhibit of the medical records, does not contain a table of contents and is not numbered in accordance with Rule 0800-02-21-.16(c) and also mandated by Rule 7.01.A. of the "Practice and Procedures" of this Court. The Court also notes that it requested, at the hearing, that the parties confer, agree to and organize the records earlier stipulated as the collective exhibit. The parties complied but there is neither a Table of Contents nor numbering of the pages. The Court numbered the records contained in Exhibit 2, sequentially, in the lower right corner. The Court reminds counsel of the provisions of the rules for future reference.

and thighs but when I started to unload the totes is when the pain really kick [sic] and started hurting.

(Ex.7).

According to Mr. Chambers, Advantage provided him with a panel of two providers. He testified he was told to see Madison Family Practice (Madison). He saw a nurse practitioner on August 4, 2014. The note reads: "He states he injured his back on Friday, August 1st around 3 am. He had been lifting and pulling wooden pallets. ….He did continue his shift until 7am and then went home to rest. Pain did not let up so then he went back to work that night and they sent him to Regional ER." He was diagnosed with "back pain," given a steroid pack, and placed on restrictions of no lifting or pulling. (Ex. 2 at 11). Mr. Chambers returned to Madison on August 12, 2014. His condition remained unchanged. The provider continued his restrictions and discussed referral for an MRI. (Ex.2 at 12).

On August 14, 2014, an MRI revealed a disc lesion at L5-S1. The radiologist recommended clinical correlation for "radiculopathy in this distribution." The report also mentions, without elaboration, a "comparison" from June 15, 2013. Following the MRI, Mr. Chambers returned to Madison on August 15, 2014. The provider continued Mr. Chambers' restrictions and stated: "refer to neuro surgeon to evaluate back pain." (Ex.2 at 16).

Madison's office staff instructed Mr. Chambers to call Broadspire, the claim administrator, to coordinate the neurological referral. He received no response from Broadspire. He worked two weeks in the Advantage office on light duty until August 15, 2014, when Advantage terminated him. He has not worked since August 15, 2014. He received no further medical treatment but continues to have back and leg pain.

Ms. Heather Tinker testified on behalf of Advantage. She is the branch manager and familiar with the ARJ assignment. ARJ does not accept employees with felony or misdemeanor convictions within the previous seven (7) years. Advantage would not have hired Mr. Chambers if he reported his previous felony record Advantage performed a background check on Mr. Chambers within the county criminal, sex offender registry and social security databases. It was negative.

Ms. Tinker was familiar with the ARJ location. She visited the area where Mr. Chambers allegedly sustained his injury. She was not familiar with the term "dock" as she understood his work area was located in the "middle of the plant." The area of the alleged injury was located in a busy area of the plant. On cross examination, Ms. Tinker confirmed there was nothing in Mr. Chambers' criminal background performed by Advantage that would have prevented his assignment to ARJ.

Advantage offered the affidavit of Mr. Robert Yarbrough. (Ex.5). In his affidavit, Mr. Yarbrough deposed that he was "working in the general vicinity of Mr. Chambers on the night in question." Mr. Chambers came to him "and stated he wanted to run a machine." It was Mr. Yarbrough's first night as Team Leader, so he asked Mr. Chambers what his job duties were. Mr. Chambers advised he worked "outside loading." Mr. Yarbrough advised that he could not "authorize him to run a machine and that he would have to speak with the group leader, Mike Savage, when he arrived." Mr. Chambers returned "about an hour later" and reported he hurt his back "the night

4

before" when lifting "skid tops." Mr. Yarbrough "took Mr. Chambers to see...Mr. Carter" and he advised both Mr. Carter and Mr. Chambers that Mr. Chambers should not lift anything until the group leader arrived. About 45 minutes later, Mr. Yarbrough "went to check on Mr. Chambers," and "Mr. Carten [sic] told me that Mr. Chambers must have left because he had not seen him in a while." Mr. Yarbrough denied assisting Mr. Chambers to his car or that Mr. Chambers requested permission to leave. Mr. Chambers "did not have an answer" as to why he had not reported the injury the night before.

Mr. Carter testified by affidavit. (Ex.6). Mr. Carter deposed that he was Mr. Chambers' immediate supervisor on "the evening of July 30, 2014 and the early morning of July 31, 2014, when he allegedly injured his back." Mr. Chambers left ARJ "in the early morning hours of July 31, 2014" without telling him or "anyone else." Mr. Carter considered Mr. Chambers a "walk-out." Mr. Chambers never told Mr. Carter that he sustained an injury on the job. Mr. Carter learned of the allegations "two days later" when told by Mr. Savage that Mr. Chambers claimed an injury.

Advantage offered a June 13, 2013, emergency room record of Regional where Mr. Chambers presented with a history of "BACK PAIN—LOWER, HX OF SAME". The date of onset was "1 day(s) ago." The emergency room provider diagnosed Mr. Chambers with an acute lumbar myofascial strain and advised him to follow up with Dr. Keith Nord in three (3) days.

On August 21, 2014, Advantage filed a C-23 Notice of Denial of Claim for Compensation. It stated as the basis for denial: "No injury arising out of the course and scope of employment." Mr. Chambers filed the PBD on October 9, 2014.

## Mr. Chamber's Contentions

Mr. Chambers contends he sustained an injury while moving pallets in the early morning hours of July 31, 2014. He reported his injury to Mr. Carter and the history provided to both Regional and Madison are consistent with the events of July 31. He denies any diagnosis of a herniated disc prior to the MRI of August 14, 2014. When the MRI revealed the disc lesion, and Madison made the neurological referral, Advantage "pulled the plug" on the claim.

Mr. Chambers admitted prior back issues to the providers. However, he asserts that the Regional note confirms the July 31 injury aggravated the prior back conditions. More likely, he argues the July 31 injury constitutes a new anatomic condition, a herniation at L5-S1.

Mr. Chambers worked light duty at Advantage until August 15, 2014, but he has not worked since. This period of light duty is evidence that Advantage had light duty available but did not offer it to Mr. Chambers after its denial of the claim.

Mr. Chambers contends his prior criminal history does not preclude a recovery of workers' compensation benefits. Further, he was forthcoming with his answers to questions regarding his criminal history during the application process with Advantage.

## Advantage's Contentions

5

Advantage claims the description of injury given by Mr. Chambers is inconsistent. He gave differing accounts of the injury at different times. Because of these inconsistencies, his credibility is too questionable to support a finding of an injury arising out of or in the course of his employment. He did not immediately report his alleged injury to Advantage as instructed in training just two days earlier. The affidavits of Mr. Yarbrough and Mr. Carter are evidence that Mr. Chambers' version of the alleged injury is inaccurate. Neither Mr. Carter nor Mr. Yarbrough's testimony supports Mr. Chambers properly reporting or otherwise advising them of an injury on July 31, 2014.

Mr. Chambers did not fully disclose his criminal background to Advantage. If he had, he would not have been assigned to ARJ. His criminal record reflects negatively upon his credibility.

Mr. Chambers had prior back problems. He received treatment in 2013 and underwent an MRI. Moreover, Advantage requested medical records from a local hospital, which it has not yet received. Advantage contends these records will show a prior back injury that is the actual cause of Mr. Chambers' current condition.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2013).

*Factual Findings*

Mr. Chambers reported his injury to Eddie Carter on July 31, 2014. On August 1, 2014, Mr. Chambers provided written notice of the injury on Advantage's "Injured Employee Statement." The date, time and description of the injury on said statement is consistent with Mr. Chambers' testimony at the hearing regarding his earlier reporting to Mr. Carter. Mr. Chambers' history at Regional and Madison is also consistent with his testimony at the hearing, his affidavit, and with the "Injured Employee Statement."

The affidavits of Mr. Carter and Mr. Yarbrough are inconsistent with each other and do not support Advantage's contentions.

Ms. Tinker testified credibly. She confirmed that the criminal background check performed on Mr. Chambers was negative and that there was nothing in his background check to prohibit his assignment to ARJ.

6

An authorized treating physician referred Mr. Chambers to a neurosurgeon. He has not received a panel of neurosurgeons from Advantage. There is no causation opinion in the record.

*Application of Law to Facts*

In this case, the Court must first resolve the parties' disagreement as to the occurrence of an incident on July 31, 2014. Mr. Chambers contends he injured his back while moving a pallet; Advantage contests the occurrence of the incident. Advantage points to Mr. Chambers' general lack of credibility because of his criminal record and to what it calls inconsistent versions of the facts. For the following reasons, the Court finds the evidence preponderates in favor of Mr. Chambers as to the occurrence of the incident in question.

First, Mr. Chambers' own evidence is more convincing. He testified consistently at the hearing with what he reported in the statement given Advantage on August 1, 2014, one day after the alleged event and with the statements in his earlier affidavit. The description of injury was, on each occasion, that he retrieved a pallet and felt pain while dragging it to his work area. His most severe pain occurred when bending to move the tubs, or "totes", in his work area. Mr. Chambers described these events at the hearing without hesitation and with clarity. There was nothing in his demeanor at the hearing which would indicate any prevarication as to the occurrence of the event. His tone of voice remained constant and he admitted adverse facts on cross-examination regarding his criminal past.

The Court considered the various arguments of the parties as to the import of the prior criminal record of Mr. Chambers. In so doing, the Court is unable to find any authority to the effect that a prior criminal record would prevent the award of workers' compensation benefits. Moreover, though Tennessee law allows for a witness to be impeached by evidence of conviction of crimes[2], the evidence in this case is limited to vague references to prior felonies of Mr. Chambers which he essentially admitted at the hearing. Interestingly, the background check performed by Advantage revealed no criminal record in the databases it searched. If the alleged out-of-state felonies were important, Advantage might have expanded its search.

Second, Advantage's witnesses, testifying by affidavit, are inconsistent. Mr. Carter, the immediate supervisor of Mr. Chambers, deposed that Mr. Chambers, in the early morning hours of July 31, 2014, left ARJ's premises without notice and "without telling me or anyone else." Conversely, Mr. Yarbrough, the "Team Leader" and Advantage's other witness, deposed that Mr. Chambers came to him to report an injury which occurred "the night before" and that, after this reporting, that he "took Mr. Chambers to see his trainer, Eddie Canten [sic], and instructed Mr. Canton [sic] and Mr. Chambers that Mr. Chambers was not to lift or touch anything until the group leader arrived." Later, Mr. Yarbrough was told by Mr. Carter that "Mr. Chambers must have left because Mr. Carter had not seen him in a while."

Notably, Mr. Yarbrough deposed he "was working in the general vicinity of Mr. Chambers

---

2 Tennessee Rule of Evidence 609 provides that, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted" subject to certain limitations. Among the acceptable limitations are certain felony convictions.

7

on the night of his alleged injury at work"; he does not specify the date or specific area of the plant. Further, and more importantly, it does not stand to reason, that if Mr. Yarbrough "took Mr. Chambers to see" Mr. Carter, that there was no discussion of an injury. However, Mr. Carter deposes that he did not learn of any alleged injury until two (2) days later. In any event, it is clear Mr. Chambers reported an injury on July 1, 2014, either in the early morning hours to Mr. Carter, as testified to by Mr. Chambers, or in the evening hours as admitted by Mr. Yarbrough.

Tennessee Code Annotated section 50-6-201 (a)(1) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury... within thirty (30) days after the occurrence of the accident." The notice should reasonably convey the idea that the employee has suffered an injury arising out of and in the course of his employment. *Masters v. Industrial Garments Mfg. Co., Inc.*, 595 S.W.2d 811, 816 (Tenn. 1980). The reason for the notice requirement is to allow the employer an opportunity to investigate the alleged injury while evidence is available and to provide timely medical care to the employee. *Id.* at 815. Mr. Chambers reported an injury within 24 hours of its occurrence. The Court finds Mr. Chambers reported an injury within hours of its occurrence.

Having found adequate proof of an event and the reporting of same, the Court turns to the relief requested. Each issue will be addressed in turn.

*Panel of Neurosurgeons*

The notice provisions of the statute do not require an employee to present medical proof of an injury before an employer is required to provide medical benefits. Rather, the statute contemplates that an employer will provide medical care upon receipt of notice of the injury, and then, during the course of treatment and examination, the panel doctor will render an opinion on causation. *See* Tenn. Code Ann. § 50-6-102(13)(2014). Otherwise, an employee would be forced to seek medical care on his own to begin a claim, which the statute does not contemplate.

Here, Advantage argued extensively that Mr. Chambers' prior back injuries were the actual or possible cause of his back condition. These arguments are premature because, if Mr. Chambers gave proper notice, then the statute requires Advantage to provide a panel of physicians for evaluation and treatment. To date, Advantage has not provided a panel meeting the requirements of the statute. Advantage provided an evaluation by a nurse practitioner, but subsequently denied the claim after the nurse practitioner referred Mr. Chambers to a neurosurgeon. Advantage did not base the denial upon any finding by the authorized provider, but upon Advantage's own determination that the injury did not arise out of the employment. It is not enough for an employer to provide a panel and an initial medical visit; it must provide a medical evaluation sufficient to afford the provider with an opportunity to reach an opinion regarding causation. Not only did Advantage fail to provide Mr. Chambers an evaluation by a medical doctor competent to opine on causation, it denied the claim before sending him to the recommended specialist who would be able to do so. Advantage must therefore provide Mr. Chambers with a panel of neurosurgeons from which he may choose a physician to opine on causation and provide treatment as appropriate.

8

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by his injury and while he is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show he was (1) *totally disabled to work by a compensable injury*; (2) *that there was a causal connection between the injury and his inability to work*; and (3) the duration of that period of disability." *Id.* (emphasis added). When an employee demonstrates the ability to return to work or attains MMI, then TTD benefits are terminated. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). In this case, the parties agree that Mr. Chambers was not totally disabled as of August 15, 2014. Rather, he had restrictions of no lifting or pulling. Therefore, by definition, Mr. Chambers is not eligible to receive TTD benefits.

Temporary partial disability (TPD) refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 LEXIS 1032, *3 (Tenn. Workers' Comp. Panel, November 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and disability for an award of TPD. To date, there is no medical opinion establishing that Mr. Chamber's injury arose primarily out of his employment. The records of Regional contain no causation opinion. The records of Madison contain only the opinion of a nurse practitioner and not a physician. The Court recognizes Mr. Chambers did not receive a proper panel. Nevertheless, in the absence of medical proof that the injury arose primarily out of the employment, Mr. Chambers cannot establish causation for the payment of temporary benefits under the statute. The issue of whether Mr. Chambers is entitled to temporary total disability benefits shall be held in abeyance pending the causation opinion of the selected panel physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Advantage shall provide Mr. Chambers with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204, to be initiated by Advantage or its workers' compensation carrier providing Mr. Chambers with a panel of orthopedic physicians as required by that statute. Medical bills shall be furnished to Advantage or its workers' compensation carrier by Mr. Chambers or the medical providers.

2. The claim for temporary benefits is denied at this interlocutory stage of the proceedings.

3. This matter is set for Initial Hearing on April 16, 2015 at 2:00 p.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this**

**Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5.  For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 9ᵗʰ day of February 2015.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free at to participate in your scheduled conference.**

**Please Note:  You must call in on the scheduled date/time to participate.  Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3.  Serve a copy of the Request for Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the

10

Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| Jeffrey P. Boyd | | | | | x | jboyd@hillboren.com |
| J. Allen Callison | | | | | x | acallison@eraclides.com |

Allen Phillips, Judge
Court of Workers' Compensation Claims

12