



FILED
Aug 12, 2025
11:43 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Lindsey E. Hoffman | ) | Docket No. 2024-60-0181 |
| | ) | |
| v. | ) | State File No. 860009-2024 |
| | ) | |
| HCA Health Services of Tennessee, | ) | |
| Inc., d/b/a TriStar Summit Medical | ) | |
| Center, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Remanded

---

The employee challenges the trial court's determination that she did not give the employer timely notice of her alleged work-related mental injury. The employee alleged she suffered a mental injury due to a series of incidents that occurred in the course and scope of her work as an emergency medical clinical pharmacist. Although the employer acknowledged it was aware that the security incidents she reported had occurred, it denied that it had received written notice of a work injury or had actual knowledge that the employee was alleging a mental injury as a result of those incidents. After an expedited hearing, the trial court determined the employee had not provided proper notice and was thus unlikely to prevail at trial in establishing an entitlement to disability or medical benefits, and the employee appealed. Having carefully reviewed the record, we affirm the decision of the trial court and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Ashley B. McGee, Nashville, Tennessee, for the employee-appellant, Lindsey E. Hoffman

Taylor R. Pruitt and Catheryne L. Grant, Brentwood, Tennessee, for the employer-appellee, HCA Health Services of Tennessee, Inc., d/b/a TriStar Summit Medical Center

## Factual and Procedural Background

Lindsey E. Hoffman ("Employee") worked as an emergency medical clinical pharmacist for HCA Health Services of Tennessee, Inc., d/b/a TriStar Summit Medical Center ("Employer") for ten years. Employee's position required her to dose and assist in administering medications to patients in emergency situations. She did not have an office but, when needed, used a cubicle located in front of the behavioral health hallway of the facility.

On April 9, 2023, Employee's back was to the behavioral health hallway as she worked at her desk when a patient apparently under the influence of methamphetamine left his room and approached her from behind. The patient was unsupervised despite facility rules that required him to have 24-hour supervision and for security to be notified when he left his room. The patient approached Employee from behind and yelled, "Where is she?" Employee was not physically touched by the patient but was concerned about the encounter. She notified her supervisor, Alex Stephens ("Stephens"), and the nursing supervisor about the incident, and she also created a report in the internal hospital system, "Vigilanz," on April 10, 2023. The Vigilanz system is used by hospital employees to report events "including, but not limited to, employee work injuries, patient safety concerns, behavioral events, environmental events or concerns, near-miss incidents, and security events or concerns." In this instance, Employee created a report in the "Security Event" portal. Thereafter, hospital administrators addressed the lack of supervision over this particular patient with facility personnel.

On April 10, 2023, the same patient again left his room unaccompanied and approached Employee from behind. Employee again documented the incident in Vigilanz, this time in the "Patient Provision of Care" portal. She also spoke with Stephens and told him she felt unsafe at work and was "terrified." Stephens indicated he would inquire about having a barrier placed between her workspace and the behavioral health ward.

Employee's regular schedule with Employer was working seven days on shift and then seven days off shift. Employee testified on April 13, when she was off shift, Stephens texted Employee that a work order had been entered for the barrier, and on April 19, Employee texted Stephens a picture of a barrier in another facility as an example of what she was requesting. When she returned to work as scheduled, there was no barrier in place, and the patient causing her concern had been moved to a room closer to her cubicle.

Another incident took place on April 23, 2023, when Employee was assisting in providing emergency medical treatment to a patient who was discovered to have a gun on his person. Per hospital policy, the staff removed the gun from the patient and gave it to security personnel. After the incident, Employee was told by another worker that the gun may have been inadvertently pointed at Employee during the process of removing it from the patient. She reported this incident in Vigilanz as a "Close Call/Near Miss."

2

In June 2023, Employee sought treatment on her own with Rebecca Hill, a nurse practitioner, for symptoms including insomnia, panic attacks, nightmares, hypervigilance, and flashbacks. Ms. Hill purportedly diagnosed Employee with adjustment disorder.[1] Meanwhile, Employee asked the pharmacy director about the barrier being placed, and she discussed the issue with the chief medical officer, who promised to assist her. She also had continued discussions with Stephens regarding placement of a barrier. At some point in the summer months of 2023, Stephens suggested she consider using the hospital's Employee Assistance Program to address her concerns, and Employee responded she was already treating with someone. In the interim, Employer placed mirrors near her desk and cubicle in an effort to assist her to see anyone approaching her workstation but did not build the barrier. Employee took medical leave beginning September 6, 2023.

Employee submitted a form signed by Ms. Hill to Employer's corporate human resources department on September 26, 2023, stating that Employee was unable to work from September 6, 2023, to December 27, 2023. The form stated Employee suffered from post-traumatic stress disorder ("PTSD"), but it also contained a diagnosis of attention deficit hyperactivity disorder and "Acute stress reaction." Employee also obtained treatment from Dr. Robert Jamieson, a psychiatrist.[2] Dr. Jamieson stated in his notes that Employee was "apprehensive about returning to work environment. While there, she experienced several potentially life-threatening events and developed severe anxiety, panic attacks, and agoraphobia. . . . She clearly does not feel ready to return to the same type of environment that she left." Employee did not return to work for Employer and ultimately filed a petition for workers' compensation benefits on January 9, 2024, listing the date of injury as September 6, 2023, the date she left work.

Thereafter, Employee filed a request for an expedited hearing supported by Dr. Jamieson's declaration in which he diagnosed Employee with PTSD and major depressive disorder and opined that her PTSD primarily "arose from the traumatic events she experienced and witnessed while working beginning on or around April 9, 2023." At the April 20, 2024 hearing, Employee testified she felt "traumatized" after the April 9, 2023 incident and "felt scared and unsafe at work." According to Employee, she had numerous conversations with Stephens following the events of April 2023 in which she was "upset [and] crying" regarding her requests for improved safety measures in the work environment. In one of these conversations, she said she "wanted to be back to [her normal self]," and she testified that Stephens stated that "he wanted [her] back to [her] old self, too."

---

[1] The record on appeal does not include any reports documenting Employee's treatment with Ms. Hill.

[2] The date Employee first treated with Dr. Jamieson is unclear. The first medical note from Dr. Jamieson in the record is dated October 9, 2023, but it states Employee is "return[ing] for follow-up. [Employee] continues to slowly feel some improvements in her degree of anxiety."

Employee admitted that although she reported the three incidents through Vigilanz, she did not use the "Non-Patient/Employee Health" portal, which the parties stipulated was the proper portal through which to report work injuries. She further admitted she had reported a previous work-related injury through the proper portal. During the expedited hearing, Employer did not present any live testimony, but it submitted declarations from Stephens, the Employee Health Injury Coordinator, and Employer's workers' compensation adjuster, all of whom denied that Employee notified Employer of a work-related injury occurring on April 9, 10, 23, or September 6 and averring that Employer was unaware of any alleged work-related injury until its receipt of Employee's petition for benefits on May 16, 2024, over a year after the incidents had occurred. Stephens's declaration corroborated Employee's testimony that he had encouraged her to contact the Employee Assistance Program. Finally, Employer argued that even if proper notice had been given, none of the incidents described by Employee were "sudden" or "unusual" within the context of her job and that the incidents did not qualify as compensable events as contemplated by the statute governing claims for mental injuries that are not accompanied by a physical injury.

In its May 21, 2025 expedited hearing order, the trial court found Employee was unlikely to prevail at trial in establishing that she provided proper notice of her injury. Stating notice was a threshold issue, the court rejected Employee's argument that her date of injury was September 6, 2023, the date she ceased working, because Tennessee has not recognized a "gradual" mental injury to which the "last day worked" rule could apply. Rather, the court determined that the date of injury was April 9, 2023, the date of the first incident, and that the fifteen-day time period to provide written notice of a work-related accident began on that date. It further determined that, although Employee reported the incident in the Vigilanz system, she reported it as a "Security Event" rather than a work-related injury, despite knowing the proper procedure for reporting a work injury. It further reasoned that Employee's Vigilanz report did not constitute written notice or "actual notice" to Employer as there was no evidence in the record that Employee provided the "time, place, nature[,] and cause of the injury," as stated in *Masters v. Industrial Garments Manufacturing Co.*, 595 S.W.2d 811, 816 (Tenn. 1980). Noting Employee's own testimony regarding her conversations with Stephens and other administrators, the court determined that although the incidents were discussed, there was no indication Employee had reported an injury or requested medical treatment. Finally, the court stated Employee had provided no reasonable excuse for her failure to report the incidents as causing a work-related injury. Employee has appealed.

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give

considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

Employee contends in her notice of appeal that employer had "actual notice" of her injury "resulting in the need for treatment" and that she filed a report with the "time, nature, place, and cause of the injury." In her brief, she argues that the reports in Vigilanz constituted written notice of the occurrence of her alleged mental injury and, further, that Employer had actual knowledge of her alleged mental injury based on the conversations Stephens and other administrators had with Employee regarding the incidents. Alternatively, Employee argues that if she did fail to give timely notice, Employer was not prejudiced as it still had the opportunity to investigate the incidents causing her injury. For its part, Employer contends that "mere knowledge" of an incident does not constitute actual knowledge of a work-related injury. Furthermore, Employer argues that the issue of prejudice is irrelevant because it does not contend there is a defect in the written notice; instead, it contends there was no notice at all. Finally, Employer argues that even if there was timely notice of the injury, the events testified to by Employee were not sudden or unusual in her course of work as an emergency medical clinical pharmacist.

*Date of Injury in Mental Injury Claims*

In circumstances where there has been no accompanying physical injury, a mental injury is defined as "an identifiable work related event resulting in a sudden or unusual stimulus." Tenn. Code Ann. § 50-6-102(15) (2024). In the present case, the trial court specifically found that the initial incident, occurring on April 9, 2023, was the date of injury and that Employee was required to provide written notice within fifteen days of that date. *See* Tenn. Code Ann. § 50-6-201(a) (2024). At the expedited hearing, Employee argued that her date of injury was September 6, 2023, as that was the date she alleged she became incapacitated from working. On appeal, Employee relies on Tennessee Code Annotated section 50-6-201(b), which governs notice requirements in gradual injury and cumulative trauma cases and requires the injured worker to provide notice within fifteen days of when he or she either:

5

(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

(2) Is rendered unable to continue to perform the employee's normal work activities as a result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201(b) (2024).

We have previously addressed whether a mental injury can be gradual, as well as whether it can be caused by multiple incidents. In *Nickerson v. Knox County*, No. 2019-03-0559, 2020 TN Wrk. Comp. App. Bd. LEXIS 52 (Tenn. Workers' Comp. App. Bd. Sept. 2, 2020), the injured employee asserted that the last date she worked should be the date of injury for her mental claim, rather than the date of the events causing her alleged PTSD. In analyzing this issue, we closely examined *Pressley v. State*, No. E2003-01133-WC-R3-CV, 2004 Tenn. LEXIS 27 (Tenn. Workers' Comp. Panel Jan. 14, 2004), stating:

> [In *Pressley*], the plaintiff, a state trooper, asserted she suffered from a mental injury caused by three specific events that occurred over a two-year period. Following these three events, the employee was diagnosed with severe depression and rendered unable to work. At the trial level, her claim for workers' compensation benefits was denied because the Claims Commissioner determined her condition was caused by workplace stress like that of others in the same or a similar position. On appeal, the Appeals Panel reversed, noting that the several specific events alleged by the employee were unusual and extraordinary. The Panel did not, however, conclude the employee was suffering from a gradual mental injury, but instead stated that these events produced a mental stimulus of shock and unexpected anxiety.

> Although the issue in *Pressley* did not hinge on identifying the date of injury, certain of the Panel's findings are relevant to our analysis in the present case. In rejecting the argument that the employee's mental condition arose gradually from typical work stress and was not caused by any sudden, acute, or unexpected mental stimulus, the Appeals Panel concluded that "all of the evidence in this action confines the origin of the employee's present mental condition to follow the specific events in question." [*Pressley*] at *11-12. The Panel then explained, "the mere fact the employee relies on several unique and specific events does not make the claim a gradual non-compensable injury." [*Pressley*] at *12. Thus, while separate, identifiable work-related events resulting in a sudden or unusual stimulus can form the basis of a mental injury claim, a "gradual" or cumulative mental injury claim

6

has not been recognized as viable under Tennessee's Workers' Compensation Law.

*Nickerson*, 2020 TN Wrk. Comp. App. Bd. LEXIS 52, at \*15-16 (some internal quotation marks and internal citations omitted).  We went on to say that

> it is important to distinguish between a gradual injury, which has been described by Tennessee courts as a new injury each day at work, and the gradual worsening of symptoms caused by a sudden or unusual mental stimulus.  The former involves repeated exposure to injurious conditions or circumstances over some period of time, resulting in a new injury every day of the exposure, while the latter involves a single incident or set of incidents causing a mental injury, the symptoms of which may worsen over time.  In consideration of the gradual injury cases discussed above, we conclude the rationale for applying a pre-2013 Reform Act doctrine specific to gradual injury claims, i.e. the "last day worked rule," to mental injury claims is not supported by Tennessee case law or the 2013 Reform Act.

*Id.* (internal quotation marks and citations omitted).[3]  Thus, in the present case, Employee's assertion that she suffered a "gradual" mental injury supporting application of the "last day worked" rule is unavailing.  However, a compensable mental injury may still be established if a series of work-related events caused a sudden or unusual mental stimulus resulting in a mental injury.  The first event described by Employee occurred on April 9, 2023, with subsequent alleged incidents occurring on April 10 and April 23, 2023.  Consequently, Employee was required to provide written notice, at the latest, within fifteen days of April 23, 2023.  In the alternative, Employee was required to prove Employer had actual knowledge of the occurrence of events causing a sudden or unusual mental stimulus resulting in Employee's alleged mental injury, or Employee had to show a reasonable excuse for her failure to give the required notice in a timely manner.

*Written Notice*

With respect to the written notice requirement, the Workers' Compensation Law provides, in relevant part:

> No compensation shall be payable under this chapter, unless written notice is given to the employer within fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to

---

[3] Our opinion in *Nickerson* was affirmed and adopted by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel.  *See Nickerson v. Knox Cnty.*, No. E2020-01286-SC-R3-WC, 2021 Tenn. LEXIS 124 (Tenn. Workers' Comp. Panel June 8, 2021).

the satisfaction of the tribunal to which the claim for compensation may be presented.

Tenn. Code Ann. § 50-6-201(a)(1).  Thereafter, subsection 201(a)(2) states:

> The notice of the occurrence of an accident by the employee required to be given to the employer shall state in plain and simple language the name and address of the employee and the time, place, nature, and cause of the accident resulting in injury . . . . The notice shall be signed by the claimant . . . .

Tenn. Code Ann. § 50-6-201(a)(2).  As the Tennessee Supreme Court has observed, "The reasons for the [notice] requirement are (1) to give the employer an opportunity to make an investigation while the facts are accessible, and (2) to enable the employer to provide timely and proper treatment for the injured employee."  *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995).  We have previously concluded, and the Special Workers' Compensation Appeals Panel has affirmed, that lateness of notice, standing alone, does not qualify as a defect sufficient to shift the burden to an employer to prove prejudice.  *Ernstes v. Printpack, Inc.*, No. 2020-07-0617, 2023 TN Wrk. Comp. App. Bd. LEXIS 25, at *35-36 (Tenn. Workers' Comp. App. Bd. June 6, 2023), *aff'd Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-W3, 2024 Tenn. LEXIS 1 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

Here, Employee contends that her documentation of each incident in the Vigilanz system served as written notice to Employer.  She correctly points out that no defect in the notice can serve to bar her from receiving benefits unless Employer can show it was prejudiced by the defect, "and then only to the extent of the prejudice."  *See* Tenn. Code Ann. § 50-6-201(a)(3).  Although it is undisputed that Employee documented the April 2023 incidents in the Vigilanz system, it is also undisputed that she did not report these incidents as "Employee Health" events, despite having knowledge of the correct procedure to report a work injury, and there is no evidence in the record that Employee claimed in these reports that she suffered a sudden or unusual mental stimulus causing a mental injury.[4]  Moreover there is no evidence in the record that Employee ever asked Employer to provide medical care for her alleged mental condition.[5]  Thus, based on the record before

---

[4] The Vigilanz reports were not introduced as evidence or reviewed by the trial court as part of the expedited hearing.  As such, there is no information in the record as to whether those reports contained the information required by Tennessee Code Annotated section 50-6-201(a)(2) or whether those reports gave Employer actual knowledge of the occurrence of a work-related mental injury.

[5] In her notice of appeal, Employee argues that "[i]t is not the obligation of an injured worker to seek out a [medical] panel."  Yet, Tenn. Comp. R. and Regs. 0800-02-01-.06(1) states that an employer is required to offer a panel of physicians "[f]ollowing receipt of notice of a workplace injury *and the employee expressing a need for medical care*."  (Emphasis added.)  Here, there is no evidence that Employee expressed to Employer a need for medical care following the work-related incidents.  Instead, she elected to seek treatment on her own.

us, the evidence does not preponderate against the trial court's finding that Employee is not likely to prove at trial that she provided timely written notice of her alleged mental injury.

*Actual Knowledge*

Lastly, Employee argues that even if the reports she made in Vigilanz do not constitute written notice, her frequent conversations with Stephens and other administrators combined with the reports in Vigilanz prove Employer had actual knowledge of her mental injury claim. "In order for a communication to constitute either written notice or actual knowledge on the part of the employer[,] it must be calculated to reasonably convey the idea to the employer that the employee claims to have suffered an injury arising out of and in the course of her employment." *Masters v. Industrial Garments Mfg. Co.*, 595 S.W.2d 811, 816 (Tenn. 1980). In *Masters*, the employee told her supervisor her back hurt from lifting and requested assistance from a "bundle boy" to continue performing her job. *Id.* at 814-15. The employer in that case testified that such complaints were not unusual, that the request was fulfilled, and that the employee never requested medical treatment or that a claim be filed. *Id.* Similar to the case at hand, the employee in *Masters* had previously reported a work-related injury and was aware of the proper reporting process. *Id.* at 815. The Supreme Court determined in *Masters* that the employer's mere knowledge that an incident had occurred did not constitute actual knowledge of an employee's alleged work-related injury. *Id.* at 816.

Here, Employee testified that she began having nightmares, flashbacks, and other symptoms of a mental injury and that she "knew" it was caused by the work-related incidents that occurred in April 2023. Yet, despite her belief as to the cause of her mental condition, there is no evidence that Employee reported a work-related mental injury to Employer or expressed a need for medical care. Although Employer acknowledges it was aware of the security incidents and was aware that Employee was upset as a result, it maintained it had no reason to know Employee was alleging a work-related mental injury caused by the security incidents she had reported. Stephens's declaration indicated that their discussions focused on Employee's request for a barrier to be placed between her desk and the behavioral ward. He also stated that he referred Employee to the Employee Assistance Program "[b]ased on her continued dissatisfaction with the solutions offered and due to frustrations she raised around employee relations in her department." Stephens maintained, however, that Employee never told him that "she was in need of medical treatment for a work-related mental injury." In sum, we conclude the evidence does not preponderate against the trial court's determination that Employee did not come forward with sufficient evidence to indicate Employer had actual knowledge of the occurrence of a work-related injury as contemplated by the statute.[6]

---

[6] The trial court found Employee provided no reasonable excuse for her delay in providing written notice to Employer, and Employee did not appeal that finding. The remaining issue concerning whether the incidents in question constituted "a sudden or unusual stimulus" as described in Tennessee Code Annotated section 50-6-102(15) is pretermitted by our resolution of the notice issue at this stage of the case.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employee.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Lindsey E. Hoffman | ) | Docket No. 2024-60-0181 |
| | ) | |
| v. | ) | State File No. 860009-2024 |
| | ) | |
| HCA Health Services of Tennessee, Inc., | ) | |
| d/b/a TriStar Summit Medical Center, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of August, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Ashley B. McGee | | | | X | ashleymcgee@rockylawfirm.com paige@rockylawfirm.com |
| Taylor R. Pruitt | | | | X | trp@feeneymurray.com shelby@feeneymurray.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov